IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL REYES, | No. 4:20-CV-00530 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| ERIC TICE, SUPERINTENDENT, | |
| Respondent. | |

**MEMORANDUM OPINION**

**NOVEMBER 8, 2022**

Petitioner Samuel Reyes, ("Reyes") files the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a conviction and sentence imposed in the Court of Common Pleas of Luzerne County in criminal case CP-40-CR-0003159-2012.

For the reasons set forth below, the petition for writ of habeas corpus, which is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

## I.    BACKGROUND

The relevant facts and procedural history, extracted from the Superior Court of Pennsylvania's January 28, 2016 decision, affirming Reyes' conviction on direct appeal, are as follows:

> On May 30, 2012, a criminal complaint was filed against Appellant, and he was released on bail. On January 18, 2013, Appellant filed a

counseled pre-trial motion seeking to suppress the firearm seized by the police, and on March 1, 2013, the trial court conducted a hearing, at which a sole witness, Police Officer Joseph Ziegler, testified. Specifically, that Officer Ziegler testified that, on May 29, 2012 at approximately 11:15 p.m., he received a dispatch "for a male in the area of Wood Street threatening a female with a firearm." N.T. 3/1/13 at 3. The male was described as "a Hispanic male wearing a black shirt and a black hat." *Id*. at 4.  Officer Ziegler arrived at the area within ten or fifteen seconds, and a man riding a bicycle on the street "pointed out [Appellant] as the person he called about." *Id*. at 28.  The Officer indicated that, when he drove slowly by the man on the bicycle, the man started pointing at Appellant and said, "He's right there, he's right there." *Id*.

The officer drove "maybe 10 feet[]" and saw Appellant, who matched the description of the subject, walking down the middle of the road. *Id*. at 5.  Coming within fifteen feet of Appellant, Officer Ziegler stopped his fully marked patrol car, exited it, and told Appellant to "come towards [the] car, and put his hands on the hood." *Id*. at 6.  Appellant proceeded towards the front of the police vehicle and, when he was about two feet from the front bumper, he asked the officer, "What?" *Id*. at 7.  Officer Zeigler responded, "Wilkes Barre police, put your hands on the hood of my car." *Id*.  At this point, Appellant turned and ran.

Officer Zeigler drew his taser and, after chasing Appellant for just five feet, he noticed Appellant was holding a black semiautomatic pistol in his right hand. At this point, while continuing to chase Appellant, the officer holstered his taser and drew his firearm. Throughout this time, Officer Ziegler directed Appellant to "stop and drop the weapon[;]" however Appellant did not comply. *Id*. at 9.  Instead, Appellant "hopped a fence" with Officer Ziegler unable to follow. *Id*. at 10-11.

Other responding officers took Appellant into custody on a nearby street, but Appellant was not in possession of the firearm when he was apprehended.  However, Officer Ziegler discovered the firearm "[j]ust on the other side of the fence that [Appellant] . . . scaled." *Id*. at 11. The firearm was loaded.

At the conclusion of the hearing, the trial court denied the suppression motion, and on April 17, 2014, Appellant filed a motion to dismiss under Pa.R.Crim.P. 600.  The trial court took the motion "under

advisement," and on July 9, 2014, the trial court denied the motion to dismiss without a hearing. Thereafter, the case proceeded to a jury trial, and the jury convicted Appellant on the sole offense.

On September 24, 2014, the trial court sentenced Appellant to six years to twelve years in prison; however, on September 30, 2014, the trial court, on its own motion, vacated the sentencing order. On October 24, 2014, the trial court re-sentenced Appellant to five years to ten years in prison, and on October 30, 2014, Appellant filed a counseled notice of appeal. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, Appellant timely complied, and the trial court filed a responsive Opinion.[1]

Petitioner raised the following two issues in his direct appeal:

1. The trial court erred in denying Petitioner's motion to suppress the firearm seized by the police.

2. The trial court erred in failing to grant Petitioner's motion to dismiss under Pa.R.Crim.P. 600.[2]

In a Memorandum Opinion filed January 28, 2016, the Superior Court of Pennsylvania found Petitioner's claims meritless and affirmed Petitioner's conviction.[3]

On October 3, 2016, Reyes filed a timely, *pro se* PCRA petition.[4] The court appointed counsel, who filed an amended petition on Reyes' behalf.[5] In those filings, Reyes contended, *inter alia*, that the trial court had improper, *ex parte*

---

[1] *Commonwealth v. Reyes*, 2152 MDA 2014 at 1-3, 2016 WL 379923 (Pa. Super. Jan. 28, 2016) (unpublished memorandum).
[2] *Id.*
[3] *Id.*
[4] *Commonwealth v. Reyes*, 323 MDA 2018, 2019 WL 275323 (Pa. Super. Jan. 22, 2019) (unpublished memorandum).
[5] *Id.*

communications with Dr. Collini, which had led Dr. Collini to draft the supplemental report.[6] According to Reyes, the supplemental report contradicted the doctor's original report, to the detriment of Reyes' defense.[7] Reyes argued that his appellate counsel was ineffective for not challenging the court's *ex parte* communications with the doctor on direct appeal.[8]

A bifurcated PCRA hearing was conducted on June 8, 2017 and September 28, 2017.[9] At the outset of the June 8, 2017 hearing, Reyes moved for the recusal of the PCRA court judge, who had also presided over his trial, arguing that the judge must recuse because he intended to call her as a witness in support of his appellate-counsel-ineffectiveness claim.[10] The PCRA judge denied Reyes' motion to recuse, and, on November 28, 2017, denied Reyes' PCRA petition.[11]

Reyes filed a timely appeal, raising the following single claim for review:

> Whether the PCRA [c]ourt erred in denying Appellant's PCRA [petition] because the presiding [j]udge should have recused herself, as she is a material witness on the underlying PCRA claim, in which Appellant claims that the [j]udge improperly contacted then pro-se Appellant's expert witness in trial. The presiding [j]udge should have recused herself as she is the only person with knowledge of how this report appeared and the context of her interactions[ ] with Dr. Collini, the pro-se Appellant's expert witness, regarding his expert opinion.[12]

---

[6]   *Id.*
[7]   Reyes believed that the doctor's opinion that the bandages on Reyes' hand made it impossible for him to grasp a gun was different (and not as beneficial for Reyes' defense) as the doctor's original opinion that Petitioner's actual hand injury precluded him from holding a gun. *Id.*
[8]   *Id.*
[9]   *Id.*
[10]  *Id.*
[11]  *Id.*
[12]  *Id.*

On January 22, 2019, the Superior Court rejected Petitioner's sole claim for relief and affirmed the denial of Reyes' PCRA petition.[13]

On October 16, 2019, a timely filed petition for allowance of appeal to the Pennsylvania Supreme Court was denied.[14]

On March 31, 2020, Petitioner filed the instant petition for writ of habeas corpus, in which he raises the following six grounds for relief:

> 1. Petitioner's right to a speedy trial was violated pursuant to the 5th, 6th, and 14th Amendments to the United States Constitution.
>
> 2. The trial court erred by failing to suppress the firearm in violation of the 5th, 6th, and 14th Amendments to the United States Constitution.
>
> 3. Pre-trial counsel rendered ineffective by failing to request that the alleged firearm be fingerprinted in violation of the 6th and/or 14th Amendments to the United States Constitution.
>
> 4. Direct Appeal counsel rendered ineffective assistance of counsel by failing to properly raise Petitioner's speedy trial violation under the 6th and 14th Amendments to the United States Constitution.
>
> 5. Direct Appeal counsel failed to raise that the trial court erred by failing to recuse herself in violation of the 6th and/or 14th Amendments to the United States Constitution.
>
> 6. Trial court erred by failing to conduct a sufficient waiver of counsel inquiry in violation of the 6th and/or 14th Amendments to the United States Constitution.[15]

---

[13] *Id*.
[14] *Commonwealth v. Reyes*, 286 MAL 2019, 655 Pa. 477 (Pa. 2019).
[15] Doc. 1.

On September 10, 2020, a response to the petition was filed.[16] Although provided the opportunity,[17] Petitioner declined to file a traverse.

## II. DISCUSSION

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.[18] Petitioner's case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). 28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding....[19]

---

[16] Doc. 14.
[17] *See* Doc. 8.
[18] *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).
[19] 28 U.S.C. § 2254.

Section 2254 sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.[20] A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[21] This limitation places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure.[22]

### A.     Exhaustion and Procedural Default

Habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."[23] The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.[24] The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one

---

[20] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).
[21] 28 U.S.C. § 2254(a).
[22] *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).
[23] 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).
[24] *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).

complete round of the state's established appellate review process," before bringing them in federal court.[25] This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts.[26] Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent.[27] Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts.[28]

Respondent argues that Reyes' claims, with the exception of his speedy trial and suppression claims, are unexhausted in that Petitioner failed to raise them in either his direct appeal or post-conviction proceedings. Reyes does not counter Respondent's argument.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. § 2254(b). In such cases,

---

[25] *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . .  state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

[26] *Picard*, 404 U.S. at 278; *see also McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts).

[27] *See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976).

[28] *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.

however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default.  *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."[29]

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule.[30]  "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law.[31]  Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[32] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice.[33]  The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency.[34]  A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

---

[29] *McCandless*, 172 F.3d at 260.
[30] *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).
[31] *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).
[32] *Murray*, 477 U.S. at 496.
[33] *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001).
[34] *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496.

physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt.[35]

Reyes fails to identify some objective external factor which prevented him from complying with the state's procedural rules and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[36] Consequently, Reyes' claims are procedurally defaulted and federal review of all his claims, except his speedy trial and suppression claims, are barred.

### B. Merits Analysis

Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[37]

---

[35] *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).
[36] *Murray*, 477 U.S. at 496.
[37] 28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction,"[38] "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."[39] The burden is on Reyes to prove entitlement to the writ.[40]

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."[41] "[A] state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet' because it was 'meant to be.' [*Harrison v.*] *Richter*, 562 U.S. 86, [ ] 102, 131 S.Ct. 770. As the Supreme Court has cautioned, an 'unreasonable application of federal law is different from an incorrect application of federal law,' *Richter*, 562 U.S. at 101, 131 S.Ct. 770 (quoting *Williams*, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ]

---

[38] *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted),
[39] *Cullen*, 563 U.S. at 181(internal quotation marks and citation omitted).
[40] *Id.*
[41] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

11

in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar. *Williams*, 529 U.S. at 411, 120 S.Ct. 1495."[42] A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court.[43]

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

1. **Speedy Trial Claim**

Petitioner claims that his "right to a speedy trial was violated pursuant to the 5th, 6th, and 14th Amendments of the United States Constitution," in that "Petitioner was arrested on May 29, 2012, trial commenced on August 4, 2014 and the state court did not conduct a *Barker* test."[44]

Petitioner raised a speedy trial issue in the state courts as a state claim, arguing that the trial court erred in failing to grant his motion to dismiss under Pa.R.Crim.P. 600.[45] Reyes' claim of a violation of his rights under the state speedy

---

[42] *Mathias v. Superintendent Frackville, SCI*, 876 F.3d 462, 476 (3d Cir. 2017).
[43] *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).
[44] Doc. 1 at 5.
[45] *Commonwealth v. Reyes*, 2152 MDA 2014 at 1-3, 2016 WL 379923 (Pa. Super. Jan. 28, 2016) (unpublished memorandum).

12

trial rule, Pa. R. Crim. P. 600, is not cognizable in this federal habeas proceeding.[46] Because Reyes did not properly raise or exhaust his speedy trial claim based on constitutional violations, this claim is procedurally defaulted. However, even if Reyes had exhausted the claim or could excuse the procedural default, the claim itself is meritless.

A criminal defendant's Sixth Amendment right to a speedy trial cannot be "quantified into a specified number of days or months."[47] Instead, the length of the delay is one of four factors that are considered in evaluating a speedy trial claim.[48] But it is a threshold factor or "triggering mechanism" for the vesting of a constitutional speedy trial right: if the delay is not "presumptively prejudicial," then there is no need to even consider the other factors that go into the balance

---

[46] *See* 28 U.S.C. § 2254(a) (providing that a federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of alleged non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.").

[47] *Barker v. Wingo*, 407 U.S. 514, 523 (1972); *see also Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991) ("Pennsylvania's 180-day rule does not define the contours of the federal constitutional right to a speedy trial.").

[48] *Barker*, 407 U.S. at 530–33.

because there is no speedy trial claim.[49]  Whether a delay is presumptively prejudicial depends on the "circumstances of the case."[50]

Accordingly, the Supreme Court stated that speedy trial cases should be decided on an *ad hoc* basis by considering the following four factors: the length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.[51]  Moreover, the Court stated:

> we regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.
>
> In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.[52]

Charges were filed against Petitioner on May 30, 2012.  Petitioner's trial began on August 4, 2014.  During that time, Reyes filed numerous motions for continuances.  Finding that the significant delay in Petitioner's case was directly caused by Petitioner, the Superior Court adopted the trial court's analysis of this claim as follows:

> Here, in analyzing the instant claim, the trial court relevantly stated the following:

---

[49]  *Id.* at 530; *see also Doggett v. United States*, 505 U.S. 647, 651–52 (1992) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay ... since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness.").
[50]  *Barker*, 407 U.S. at 530.
[51]  *Id.*
[52]  *Id.* at 533.

First, . . . we start with the mechanical date. Here, the complaint was filed on May 30, 2012. Pursuant to the Rule, the trial in the case was to commence within 365 days from the date on which the complaint was filed, or on May 30, 2013.

The next determination is whether any excludable time exists[.] [Rule 600] allows the [c]ourt to adjust the date for delay caused by the defendant. The record in this case reflects that there was delay caused by [Appellant] on multiple occasions:

**July 3, 2012-July 18, 2012**-request for continuance by [Appellant] (15 days)
**July 18, 2012-July 25, 2012**-request for continuance by [Appellant] (7 days)
**July 25, 2012-August 29, 2012**-request for continuance by [Appellant] (35 days)
**December 18, 2012-March 11, 2013**-request for continuance by [Appellant] (83 days)
**March 11, 2013-June 3, 2013**-request for continuance by [Appellant] (84 days)
**June 3, 2013-July 8, 2013**-request for continuance by [Appellant] (35 days)
**July 8, 2013-October 21, 2013**-request for continuance by [Appellant] (105 days)
**October 21, 2013-March 4, 2014**-request for continuance by [Appellant] (134 days)
**March 4, 2014-June 23, 2014**-request for continuance by [Appellant] (111 days)
**June 23, 2014-August 4, 2014**-request for continuance by [Appellant] (42 days)

**TOTAL NUMBER OF DAYS 651**

In reviewing the record and analyzing the entire procedural history[,] . . . this court finds that the adjusted run date is calculated by adding the above delay to the mechanical run date for an adjusted run date of March 12, 2015. (Calculated by adding 651 days to the mechanical run date of May 30,

15

> 2013). Trial commenced on August 4, 2014, well within the adjusted run date[.]

Trial Court Opinion filed 2/27/15 at 5-6 (bold added).

As the trial court determined, application of Rule 600 to the instant case was straightforward. We find no error in the trial court's analysis and, therefore, we conclude the trial court did not abuse its discretion in denying Appellant's motion to dismiss under Rule 600. *See Commonwealth v. Ramos*, 936 A.2d at 1103 ("We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.") (citation omitted)).[53]

It is apparent from the voluminous record in this case that the delay in Petitioner's case proceeding to trial was the result of Petitioner's own actions. Petitioner's numerous motions for continuance resulted in Petitioner's trial date continually being pushed back. Thus, Petitioner cannot now claim that his speedy trial rights were violated where it is evident that Petitioner's actions were the cause of the delay. Accordingly, Petitioner is not entitled to relief on this claim.

### 2. Motion to Suppress

Petitioner's second claim is that the trial court erred when it denied his motion to suppress.[54]

The Supreme Court of the United States has held that a federal habeas court cannot review a Fourth Amendment claim unless a petitioner was denied a full and fair opportunity to litigate it in the state courts.[55] Generally, a petitioner has

---

[53] *Commonwealth v. Reyes*, 2152 MDA 2014 at 10-11, 2016 WL 379923 (Pa. Super. Jan. 28, 2016) (unpublished memorandum).
[54] Doc. 1.
[55] *See Stone v. Powell*, 428 U.S. 465, 494 (1976).

16

received a full and fair opportunity to litigate a Fourth Amendment claim if the state has made available a mechanism for requesting the suppression of evidence, irrespective of whether the petitioner actually availed himself of that mechanism.[56] A petitioner has also had a full and fair opportunity to litigate his claim regardless of whether the state courts properly resolved the claim.[57] On the other hand, a petitioner has not received a full and fair opportunity if the state's system contains a structural defect that prevented the state from fully and fairly hearing the Fourth Amendment claim.[58]

Rules 578 and 581 of the Pennsylvania Rules of Criminal Procedure permit a defendant to file a pre-trial motion to suppress evidence, thereby providing a mechanism for presenting Fourth Amendment issues in the Pennsylvania state courts.[59] Petitioner availed himself of this mechanism on January 18, 2013, by filing on a counseled pre-trial motion, seeking to suppress the firearm seized by the police, based on the following:

> Appellant alleges he was subjected to an investigative detention when Officer Ziegler initially ordered him to "come towards [the] car, put his hands on the hood[,]" N.T. 3/1/13 at 6, and that such seizure occurred without the requisite reasonable suspicion. In this vein, Appellant contends the description of the suspect was "no more than 'a Hispanic male wearing a black shirt and a black hat[,]'" and the officer stopped him merely because he was "a male Hispanic." Appellant's Brief at 7. Further, Appellant suggests there were inconsistencies between the 911 call sheet, which indicated a male was sending threatening text

---

[56] *See Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980).
[57] *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).
[58] *See id*.
[59] *See* Pa. R. Crim. P. 578, 581.

messages to a female, and Officer Ziegler's testimony that the 911 dispatcher told him there was a male threatening a female with a firearm.[60]

The Superior Court, "[b]ased on the totality of the circumstances, [] conclude[d] the record supports the conclusion that Officer Ziegler had the requisite reasonable suspicion to conduct an investigatory detention of Appellant."[61] Consequently, there is nothing in the record before the Court to suggest that Petitioner did not receive a full and fair litigation of his Fourth Amendment claim.[62] Accordingly, the Court will deny Petitioner's second ground for relief as barred by *Stone v. Powell*.[63]

## III.  CERTIFICATE OF APPEALABILITY

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.' "[64] "Where a district court has rejected the constitutional claims on the merits, ... the petitioner must demonstrate that reasonable jurists

---

[60] *Commonwealth v. Reyes*, 2152 MDA 2014 at 4-7, 2016 WL 379923 (Pa. Super. Jan. 28, 2016) (unpublished memorandum).
[61] *Id*.
[62] *See, e.g., Marshall*, 307 F.3d at 82 (noting that whether or not a state court incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity analysis).
[63] *Gilmore v. Marks*, 799 F.2d 51, 54 (3d Cir. 1986) (holding that *Stone* precludes a habeas petitioner from raising a Fourth Amendment claim if he has been afforded a full and fair opportunity to litigate that claim in state court).
[64] *Tomlin v. Britton*, 448 Fed.Appx. 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).

would find the district court's assessment of the constitutional claims debatable or wrong."[65]

For the reasons set forth herein, Petitioner has not made a substantial showing of the denial of a constitutional right or that jurists of reason would find it debatable that Court's assessment of the claims debatable or wrong. Accordingly, a COA will not issue.

## IV. CONCLUSION

For the reasons set forth above, the Court will deny the petition for writ of habeas corpus. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[65] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).